IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JOHN BLANK                    :         CIVIL ACTION
                              :
        v.                    :
                              :
THE PENNSYLVANIA SOCIETY FOR  :
THE PREVENTION OF CRUELTY     :
TO ANIMALS, et al.            :         NO. 10-3222


                         MEMORANDUM

Bartle, C.J.                                   October 5, 2010

        Before the court are the motion of defendants
Pennsylvania Society for the Prevention of Cruelty to Animals
("SPCA"), its CEO Howard Nelson, and its employee humane society
police officers George Bengal, Ashley Mutch, and Juan Martinez
and the separate motion of defendants Main Line Animal Rescue,
Inc. ("MLAR") and its CEO and president William Smith to dismiss
the complaint under Rule 12(b)(6) of the Federal Rules of Civil
Procedure.  All defendants contend that plaintiff John Blank has
failed to state claims upon which relief can be granted.

        According to the complaint, the defendants engaged in a
conspiracy falsely to accuse and convict Blank under Pennsylvania
law of animal cruelty in relation to his licensed dog kennel.
This purported conspiracy began on July 7, 2008 when two
volunteers from MLAR responded to an advertisement placed by
Blank for free dogs.  Blank had placed the advertisement in the
hope of finding new homes for his older dogs with physical
abnormalities rather than euthanizing them.  Blank gave the

volunteers nine adult dogs, which they brought to the SPCA facilities in Philadelphia for examination by the SPCA chief veterinarian. The veterinarian made a report of the dogs' conditions to defendant Mutch, a humane society police officer. On July 10, 2008, Mutch conducted an undercover investigation of Blank's farm and kennel, claiming that she worked for an organization called "Puppies R Us" and wanted to purchase puppies. Blank advised Mutch that he did not have any for sale, but he gave her a single puppy for free after warning her that it was suffering from sugar shock and needed to be treated with a dose of corn syrup. The puppy later died under the care of Mutch.

The complaint further alleges that the conspiracy culminated in Mutch's swearing a false affidavit as to the conditions of Blank's kennel and the dogs therein in order to obtain a warrant. The warrant was executed in a raid on Blank's kennel on July 17, 2008 by SPCA officers including Martinez and Bengal. During that raid, Martinez handcuffed Blank, placed him in the back of a police car for the duration of the search, and seized six adult dogs, two litters of puppies, and records from the kennel. Multiple news outlets were at the scene and publicized the events. On July 18, 2008, the Pennsylvania Bureau of Dog Law Enforcement[1] inspected Blank's kennel, found eight

<hr />

1. Pennsylvania's Department of Agriculture, Bureau of Dog Law Enforcement is the state agency tasked with granting and revoking kennel licenses within the Commonwealth. See 3 Pa. Cons. Stat.
(continued...)

unsatisfactory conditions, and required him to shut down the
kennel within ten days.  After that ten-day period, defendant
SPCA returned to the kennel along with media organizations and
publically seized the remaining more than 65 adult dogs present
at the facility.

Blank was charged with eight counts of animal cruelty,
two counts of failure to maintain a kennel in a sanitary and
humane condition, and one count of harassment.[2]  As a result of a
plea agreement, Blank pleaded guilty to the charges on July 25,
2008 in the Magisterial District Court of Chester County before
Magisterial District Judge Harry W. Farmer and closed his kennel.
He also permitted the Bureau of Dog Law Enforcement to inspect
his farm monthly for dogs.

During these events, employees of the SPCA and MLAR
made various statements to the media regarding the raid and
prosecution, including giving interviews on a television program
called "Animal Cops."  According to the complaint, Mutch of the
SPCA stated that "those dogs were victims of a puppy mill," and
that she feared that Blank would "exterminate the dogs" prior to
being raided.  Smith of MLAR publically stated that the dogs
"were missing their eyes" and "had big gaping holes with flies in
them.  One of the dogs had his eye hanging out."

---

1.(...continued)
§ 459-211 (2010).

2.  Under Pennsylvania law, animal cruelty is a violation of 18
Pa. Cons. Stat. § 5511, which Blank references in his complaint.

The first five claims of the complaint are brought for alleged violations of the federal Constitution under 42 U.S.C. § 1983.  Count 1 is a request for declaratory judgment against all defendants that they unconstitutionally searched his home and seized his property as part of a conspiracy to deprive him of his constitutional rights.  Count 2 further avers that defendants SPCA, Nelson, Bengal, Mutch, and Martinez searched and seized his property in violation of the Fourth Amendment.  In Count 3, Blank pleads false imprisonment by those same defendants stemming from his arrest during the search and seizure of his property.  Count 4 alleges that the SPCA failed to provide adequate training and supervision to Nelson, Bengal, Mutch, and Martinez, and Count 5 makes a claim of a civil rights conspiracy against all defendants.

The remaining counts plead only state law claims. Count 6 asserts common law conversion for the unlawful seizure of Blank's property by all defendants.  Count 7 alleges common law conspiracy by all defendants.  In Count 8, Blank avers that the defendants committed the tort of invasion of privacy through false light as a result of press releases and media statements concerning the raid on Blank's kennel.  A claim of trespass by defendants SPCA, Bengal, Mutch, and Martinez during the raid is alleged in Count 9.  Finally, Count 10 pleads assault and battery by SPCA and Martinez in the course of Blank's arrest.

For purposes of a motion to dismiss under Rule 12(b)(6), we must take all well-pleaded facts as true and draw

-4-

all reasonable inferences in the plaintiff's favor.  See Erickson
v. Pardus, 551 U.S. 89, 94 (2007).  We also may consider
undisputed documents alleged or referenced in the complaint.  See
Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998
F.2d 1192, 1196 (3d Cir. 1993); see also Faulkner v. Beer, 463
F.3d 130, 133-35 (2d Cir. 2006); Kaempe v. Myers, 367 F.3d 958,
965 (D.C. Cir. 2004); Alternative Energy, Inc. v. St. Paul Fire
and Marine Ins. Co., 267 F.3d 30, 33 (1st Cir. 2001).

　　　　Defendants SPCA, Nelson, Bengal, Mutch, and Martinez
argue that all of Blank's federal claims which are brought under
§ 1983 must be dismissed because they constitute an impermissible
collateral attack on his conviction.  For purposes of this motion
to dismiss, we assume that defendant SPCA and its employees,
defendants Nelson, Bengal, Mutch, and Martinez, have acted under
the color of state law, as is required for Blank to sustain a
§ 1983 suit against them.

　　　　Pennsylvania law deputizes SPCA employees by providing
that, "[a]n agent of any society or association for the
prevention of cruelty to animals, incorporated under the laws of
the Commonwealth, shall have the same powers to initiate criminal
proceedings provided for police officers by the Pennsylvania
Rules of Criminal Procedure."  18 Pa. Cons. Stat. § 5511(i).
That statute also empowers the officers to seize any animal kept,
used or intended to be used for fighting and allows search
warrants to be issued to them.  See 18 Pa. Cons. Stat. § 5511(j),
(l).  Humane society police officers are defined to be "[a]ny

-5-

person who holds a current appointment under this chapter to act as a humane society police officer for a society or association for the prevention of cruelty to animals." 22 Pa. Cons. Stat. § 3702. For the purposes of this motion, we will assume that Nelson, Bengal, Mutch, and Martinez acted as humane society police officers.

It is undisputed that Blank pleaded guilty to eleven summary charges, including eight counts for cruelty to animals. He has not alleged that his convictions were overturned, invalidated, or expunged. In Heck v. Humphrey, the United States Supreme Court held:

> In order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.

512 U.S. 477, 486-87 (1994). For each claim of unconstitutional conviction or imprisonment, a district court "must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." Id.; see also Gibson v. Superintendent of N.J.

Dep't of Law & Pub. Safety - Div. of State Police, 411 F.3d 427, 447 (3d Cir. 2005).

Counts 1, 2, 3, and 5 directly relate to the allegedly unlawful search of Blank's kennel and his seizure and concomitant detention in the police vehicle. Those claims are all premised on the fact that the defendants were without lawful authority to enter Blank's property, search his kennel, detain him, or seize his property despite having a warrant to do so.

Civil challenges to purportedly unconstitutional searches and seizures under § 1983 are allowable if finding them unlawful will not necessarily invalidate a prisoner's conviction. See Nelson v. Campbell, 541 U.S. 637, 647 (2004). In certain circumstances, where the weight of evidence produced at trial may be sufficient to sustain the validity of a conviction even in the face of an unconstitutional search or seizure, such challenges can proceed. However, here the Commonwealth's entire case hinged on the evidence of animal cruelty obtained through the July 17, 2008 raid. Without that search and seizure, Blank could not have been convicted. Were it determined that the raid and seizure of his person were unconstitutional, we would be finding that no valid evidence of his guilt existed, and we would necessarily deem his convictions to be invalid. As such, Counts 1, 2, 3, and 5 mount an impermissible collateral attack on his conviction and must be dismissed under Heck v. Humphrey, 512 U.S. at 486-87.

In Count 4, Blank alleges that the SPCA provided inadequate training and supervision of its officers regarding how

to conduct lawful animal abuse investigations and how to
determine accurately whether animal cruelty occurred, as well as
suspects' Fourth Amendment rights and general animal care.  He
also maintains that the SPCA was negligent in supervising its
officers because, at the time of the July 17, 2008 raid,
defendants Mutch, Bengal, and Martinez had not been properly
sworn in as a humane police officer in Chester County.

    These allegations too fail under the test promulgated
in Heck v. Humphrey.  See id.  If Blank were to prevail on his
claim that the SPCA was negligent for failing to train properly
its officers in conducting an accurate animal abuse investigation
and in making a lawful raid, the only injury he would have
suffered would have resulted from an invalid search and seizure.
Thus, to succeed on this count would necessarily call into
question the validity of Blank's subsequent conviction for animal
cruelty.

    Blank had opportunities to challenge the defendants'
actions by contesting these charges against him in the state
courts.  Instead, he chose to enter a guilty plea.  We cannot now
allow him to undermine this legitimately obtained conviction
through a civil lawsuit under 42 U.S.C. § 1983.  Accordingly,
Counts 1 through 5 of Blank's complaint will be dismissed as
against defendants SPCA, Nelson, Bengal, Mutch, and Martinez.

    Defendants MLAR and Smith have also challenged the
legal sufficiency of Counts 1 and 5, the only two federal counts
against them.  The sole actions of MLAR and Smith recounted in

the complaint consisted of delivering animals to the SPCA for examination, reporting what they believed to be an ongoing crime at Blank's kennel, and making statements to the media about an issue of public concern.

In Count 1, as noted above, Blank seeks a declaratory judgment under § 1983 that MLAR and Smith conspired with the other defendants in order to deprive Blank of his constitutional rights under the Fourth and Fourteenth Amendment.[3]  In Count 5, Blank alleges that all the named defendants engaged in a conspiracy under § 1983 to deprive him of his civil rights. Defendants MLAR and Smith argue that Blank has failed to assert that they acted under color of state law as is required under § 1983 and that the claim must therefore be dismissed.  A person acts under color of state law only when exercising power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law."  Polk County v. Dodson, 454 U.S. 312, 317-18 (1981).

Our Court of Appeals has found that private actors may only be found to act under color of state law if "there is such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself."  Leshko v. Servis, 423 F.3d 337, 339 (3d Cir.

_____

3.  In Count 1, Blank also seeks other declaratory judgments regarding the illegality of the search and seizure of his property.  However, according to the facts averred in the complaint, these actions were taken by defendant SPCA and its employees and do not involve defendants MLAR and Smith.

2005).  To answer whether such a close nexus occurs, the court must consider (1) "whether the private entity has exercised powers that are traditionally the exclusive prerogative of the state"; (2) "whether the private party has acted with the help of or in concert with state officials"; and (3) whether "the [s]tate has so far insinuated itself into a position of interdependence with the acting party that it must be recognized as a joint participant in the challenged activity."  Mark v. Borough of Hatboro, 51 F.3d 1137, 1142 (3d Cir. 1995).

Based on our reading of the complaint, defendants MLAR and Smith fail to qualify as acting under color of state law. Neither MLAR nor Smith has exercised any powers that are traditionally the prerogative of the state.  MLAR employees simply visited Blank's kennel asking to purchase dogs in response to an advertisement to the general public which Blank placed in a newspaper.  Blank placed the ads for the benefit of the general public and expected private citizens to inquire about obtaining the animals.  After obtaining the dogs from Blank, MLAR employees brought the animals to SPCA regarding concerns that they had been mistreated.  Private citizens are always free and indeed encouraged to report crimes to state authorities.  Doing so and making comments to the media about the events in question do not transform a person into a state actor.

In addition, despite the conclusory language that a conspiracy existed, the complaint does not allege facts that MLAR and Smith acted with the help of or in concert with the

-10-

SPCA.  Although they did turn the dogs over to the SPCA, they went to Blank's kennel of their own accord and without any prompting by the SPCA or other state authorities.  They independently chose to turn the dogs over and to make statements to the media about their individual perceptions of Blank's operations.

Finally, the complaint lacks any facts that MLAR and Smith were joint participants in state activities based on the state's interdependence.  While the SPCA did act on a tip from a MLAR employee, it in no other way relied on MLAR's participation in conducting its investigation of Blank's kennel, obtaining a warrant to search the kennel, executing its raid on the kennel, or disclosing the conditions at the kennel to the media.  The SPCA did not request that MLAR undertake its activities regarding Blank's kennel.  Nor does SPCA rely on MLAR to provide information for all of its investigations.  MLAR's interaction with the SPCA regarding Blank's kennel merely resulted in a state agency properly responding to information provided by private citizens.  The state cannot fairly be said to have insinuated itself so far into a position of interdependence with MLAR that MLAR must be recognized as a joint participant with the state.

To allow a claim to proceed, a plaintiff must state sufficient factual matter to make it plausible that his claim is true.  See Bell Atlantic Corp. V. Twombly, 550 U.S. 544, 570 (2007); accord Ashcroft v. Iqbal, 556 U.S. ---, 129 S. Ct. 1937 (2009).  Based on the facts alleged in the complaint, there does

not exist such a close nexus between the state and the activities of MLAR and Smith that it would be proper to consider them as having acted under the color of state law.  Blank has not pleaded facts that support his allegations of conspiracy in Counts 1 and 5.  His statements are merely conclusory.  Thus, even if Counts 1 and 5 against MLAR and Smith would not be barred under <u>Heck v. Humphrey</u>, we will nonetheless dismiss these counts as to these defendants.

The remaining five counts of Blank's complaint contain only state law claims.  A district court may decline to exercise supplemental jurisdiction over such claims if "the district court has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3) (2010); <u>see</u> <u>also</u> <u>United Mine Workers of Am. v. Gibbs</u>, 383 U.S. 715, 726-27 (1966).  Our Court of Appeals has held that "[i]f it appears that the federal claim is subject to dismissal under Fed. R. Civ. P. 12(b)(6) ... then the court should ordinarily refrain from exercising jurisdiction in the absence of extraordinary circumstances." <u>Tully v. Mott Supermarkets, Inc.</u>, 540 F.2d 187, 195 (3d Cir. 1976).  No such extraordinary circumstances exist here.

As we will dismiss all claims over which this court has original jurisdiction, we will exercise our discretion to decline to retain supplemental jurisdiction of Blank's state law claims. We will dismiss these claims without prejudice.